IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**ROBERT A. PAYNE,**
**Claimant Below, Petitioner**

vs.) No. 23-ICA-7          (JCN: 2004022949)

**PINNACLE MINING CO., LLC,**
**Employer Below, Respondent**

**and**

**WEST VIRGINIA OFFICES OF THE INSURANCE COMMISSIONER,**
**in its capacity as administrator of the Old Fund, Respondent**

**FILED**
**June 15, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

Petitioner Robert A. Payne appeals the December 12, 2022, order of the Workers' Compensation Board of Review ("Board"). Respondent Pinnacle Mining Co., LLC, did not file a response. Respondent West Virginia Office of the Insurance Commissioner ("Old Fund") filed a timely response.[1] Petitioner did not file a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's orders (1) awarding Mr. Payne no additional permanent partial disability ("PPD") award and (2) denying Mr. Payne's request for a supplemental independent medical evaluation ("IME") report from Prasadarao Mukkamala, M.D.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Payne's claim has a long and convoluted procedural history leading up to this appeal. Sometime in the 1990s, Mr. Payne received a 5% PPD award for a left knee injury in claim number 890065491. Later, in early 2003, Mr. Payne sustained another work-related injury, which was held compensable for a sprain/strain in claim number 2003049597. According to *Payne v. U.S. Steel Mining Co., Inc.*, No. 22-ICA-186, 2023

---

[1] Robert A. Payne is self-represented. Old Fund is represented by Steven K. Wellman, Esq., and James W. Heslep, Esq.

1

WL 1464100 (W. Va. Ct. App. Feb. 2, 2023) (memorandum decision), it appears as though Mr. Payne was granted no PPD award in that claim. Regarding the instant matter, Mr. Payne filed an application for workers' compensation benefits for his bilateral knee injury with a date of injury/last exposure of July 18, 2003. The claim was assigned claim number 2004022949, and by order dated December 3, 2003, the claim was held compensable for osteoarthrosis.[2]

Subsequent MRIs revealed a lateral meniscus tear, a medial meniscus tear, and severe degenerative changes. On July 27, 2004, Mr. Payne underwent an independent medical evaluation ("IME") performed by Ramanthan Padmanaban, M.D. Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("the *Guides*"), Dr. Padmanaban found Mr. Payne to have a total of 18% whole person impairment ("WPI") for his knees.

What followed was a series of confusing orders by the claim administrator. On August 17, 2004, the claim administrator granted Mr. Payne a 13% PPD award. Then, by order dated September 16, 2004, the claim administrator issued a corrected order, granting Mr. Payne an 18% PPD award. By order dated November 2, 2004, the claim administrator issued a second corrected order, granting Mr. Payne a 13% PPD award. This order noted that Dr. Padmanaban had recommended an 18% WPI rating for Mr. Payne's knees and that 5% was deducted for the PPD award he received under claim number 89006549. During that time, the claim administrator also issued an order recognizing tear of the meniscus, osteoarthritis of unspecified site, and osteoarthrosis as compensable diagnoses in the claim.

On October 6, 2005, Mr. Payne underwent a diagnostic arthroscopy of the right knee, including tricompartmental chondroplasty, partial medial meniscectomy, debridement of a torn anterior cruciate ligament ("ACL"), and extensive synovectomy. The post-operative diagnosis was right knee sprain, osteoarthritis, torn medial meniscus, tricompartmental grade 4 chondromalacia, and complete tear of the ACL.

By order dated January 6, 2006, the Office of Judges ("OOJ") reversed the claim administrator's November 2, 2004, order (granting a 13% PPD award) and granted Mr. Payne a total award of 18% PPD. Subsequently, Rebecca Thaxton, M.D., performed a record review and recommended that post-traumatic arthritis of the right knee be added to the claim. The claim administrator added traumatic arthropathy to the claim in February of 2006. Later in 2006, Mr. Payne's treating physician opined that Mr. Payne likely had similar findings of post-traumatic arthritis his left knee and that he would eventually require a total knee replacement in both knees.

---

[2] Mr. Payne suggests that two separate injuries were covered by this claim number, including an injury that occurred on July 20, 2004, but there is no evidence demonstrating this to be the case, nor was this claim number combined with claim number 2003049597.

In March of 2006, Mr. Payne underwent a second IME, which was performed by Joseph Grady, M.D. Dr. Grady recommended that Mr. Payne undergo an arthroscopic surgery for his left knee. However, if Mr. Payne elected to not undergo the surgery, Dr. Grady opined that he would be considered to have reached maximum medical improvement ("MMI"). Dr. Grady recommended 12% WPI per knee, which totaled 23% WPI on the combined values chart of the *Guides*. Thereafter, in July of 2006, Dr. Grady issued a supplemental report in which he again found 23% WPI but apportioned 5% to Mr. Payne's knee injury in claim number 89006549. Therefore, Dr. Grady's final recommendation was 18% WPI.

The claim administrator granted Mr. Payne no additional PPD award by order dated July 24, 2006, as Mr. Payne had already been granted a 5% PPD award in claim number 89006549 and 18% in the instant claim. The OOJ affirmed the claim administrator's decision in April of 2007. In 2008, Mr. Payne sought to have lumbar radiculitis and spinal spondylosis as compensable conditions in the claim. However, the claim administrator denied the request on December 8, 2008, and the OOJ affirmed the decision on July 27, 2009. The Board later affirmed the OOJ's order as well. In September of 2009, Mr. Payne sought to have depressive disorder and generalized anxiety disorder added to the claim and, in October of 2009, once again attempted to add his lumbar conditions to the claim. In 2010, Mr. Payne underwent a psychiatric evaluation and was granted an 11% psychiatric PPD award by order dated July 30, 2010.

The claim administrator issued an order on February 26, 2013, denying the lumbar conditions Mr. Payne was attempting to add to the claim and denying the addition of depression to the claim.[3] Mr. Payne protested. On November 3, 2013, the OOJ issued an order affirming the claim administrator's decision to deny the addition of the lumbar conditions to the claim. However, the OOJ reversed the claim administrator's order insofar as it denied the addition of depression to the claim. Mr. Payne appealed the denial of his lumbar conditions. The claim administrator issued an order on December 4, 2013, acknowledging the OOJ's order, adding depression to the claim, and reiterating that the lumbar conditions were not compensable. The Board later affirmed the OOJ's order denying the addition of the lumbar conditions to the claim.

Subsequently, Mr. Payne requested that the claim be reopened for PPD consideration and requested that complete ACL tear be added to the claim. On May 28, 2014, the claim administrator denied Mr. Payne's request to reopen the claim for PPD benefits on the basis that it was time-barred pursuant to West Virginia Code § 23-4-16 (2005). Mr. Payne protested. In June of 2014, Mr. Payne saw his treating physician, who opined that total knee replacement was the best treatment option. The treating physician also requested that medial meniscus tear and ACL sprain be added to the claim. For some

---

[3] It is unknown why the claim administrator denied the addition of depression to the claim when it had already awarded Mr. Payne an 11% psychiatric PPD award.

unknown reason, the claim administrator entered an order reopening the claim for PPD benefits on July 17, 2014.

Paul Bachwitt, M.D., evaluated Mr. Payne in October and November of 2014. According to Dr. Bachwitt, Mr. Payne's knee conditions predated his date of injury as shown by x-rays taken two months after the injury, which revealed severe degenerative changes that could not have developed solely in relation to the injury. Dr. Bachwitt also opined that Mr. Payne's best option for treatment was total knee replacement, 50% of which would be attributable to his employment and 50% of which would be attributable to his preexisting condition, age, and weight.

Mr. Payne sought treatment from Vellaiappan Somasundaram, M.D., who agreed with Dr. Bachwitt's assessment. However, Mr. Payne elected to not undergo total knee replacement. In August of 2015, Dr. Somasundaram submitted an authorization wherein he requested a "decision on IME with percentages." Mr. Payne was sent to Syam Stoll, M.D., for an IME in September of 2015. Dr. Stoll opined that Mr. Payne had reached MMI. According to Dr. Stoll, Mr. Payne exhibited emotional behavior prior to the exam and stated he did not want to stay for the appointment if the purpose was not for permanent total disability ("PTD") impairment ratings. Dr. Stoll also opined that Mr. Payne's range of motion measurements were not valid and that he exhibited malingering behavior and symptom magnification, which were supported by the findings of his psychiatric IME. Dr. Stoll further stated "[a]n impairment rating 12 years after an injury would not be valid due to multiple reasons: due to lack of exposure since injury, natural progression of aging and any independent intervening events outside of this claim." As such, given Mr. Payne's symptom magnification, the length of time since his injury, and the natural progression of his degenerative osteoarthritis, Mr. Stoll provided no additional impairment rating. By order dated November 19, 2015, the claim administrator granted no additional PPD based upon Dr. Stoll's report, which was affirmed by the OOJ on November 10, 2016.

However, on March 29, 2017, the Board reversed the claim administrator's order granting no additional PPD and remanded the matter with instructions to refer Mr. Payne for another IME. The Board reasoned that Dr. Stoll's report was not reliable because he did not provide an impairment rating for osteoarthrosis, meniscus tear, and traumatic arthropathy, which were compensable in the claim. Further, the Board found that, although Mr. Payne's range of motion measurements were invalid, he could have been rated by "for the abnormalities noted on x-rays" instead.

Mr. Payne was sent to Dr. Padmanaban for an IME in June of 2017. Using the *Guides*, Dr. Padmanaban assessed Mr. Payne's WPI under both the range of motion method and the diagnosis-based estimates method. Dr. Padmanaban found that Mr. Payne received a higher impairment rating under the range of motion method and, as such, continued with the range of motion method. Specifically, Dr. Padmanaban recommended 18% WPI for the left knee and 18% WPI for the right knee. Dr. Padmanaban also evaluated the left ankle,

despite the fact that it was not a compensable component of the claim, and found 4% WPI. Dr. Padmanaban found no symptom exaggeration during his exam. In combining the ratings on the combined values chart, Dr. Padmanaban reached a total of 36% WPI. He then deducted Mr. Payne's 5% PPD award under claim number 89006549 and his 18% PPD award granted to date in the instant claim, which left an additional 13% WPI.

In accordance with Dr. Padmanaban's recommendation, the claim administrator granted Mr. Payne an additional 13% PPD award on June 27, 2017. At that time, Mr. Payne's total PPD award between his knees, non-compensable ankle, and depression totaled to 47%. Mr. Payne protested.

On September 5, 2017, Mr. Payne underwent a total right knee replacement, and, on March 27, 2018, he underwent a total left knee replacement. On May 9, 2018, Mr. Payne saw Bruce Guberman, M.D., for an IME. Dr. Guberman found Mr. Payne to have 30% WPI for the total right knee replacement, but was unable to offer an impairment rating for the total left knee replacement as Mr. Payne had not yet reached MMI in that respect. Dr. Guberman also assessed 26% WPI for arthritis in the left and right knee based upon x-rays. When combined, Dr. Guberman found a total of 45% impairment. He then deducted 5% due to Mr. Payne's PPD award under claim number 89006549, which left 40% WPI attributable to the knee injuries. Dr. Guberman found 4% WPI for the left ankle and 5% WPI for the lumbar spine. Dr. Guberman's final recommendation totaled to 45% WPI for the knees, non-compensable ankle, and non-compensable lumbar spine.

On August 15, 2019, the OOJ affirmed the claim administrator's order granting Mr. Payne an additional 13% PPD award. The OOJ found that Dr. Guberman's report was unreliable because he rated Mr. Payne despite finding that his left knee had not yet reached MMI. Further, Dr. Guberman inappropriately evaluated Mr. Payne for joint space loss even though he had undergone total knee replacement. Lastly, the OOJ noted that Dr. Guberman improperly recommended an impairment rating for the ankle and lumbar spine, which were not compensable. The Board affirmed the OOJ's order on December 19, 2019. Subsequently, Mr. Payne, through Dr. Somasundaram, attempted to have his back pain re-evaluated. However, the claim administrator denied the request, which was affirmed by the OOJ and later the Board.

In April of 2021, Robert McCleary, D.O., the physician who performed Mr. Payne's total knee replacements, requested that the claim be reopened for PPD benefits. Initially, the claim administrator denied the request as being time-barred. However, on July 26, 2021, the claim administrator reopened the claim for PPD and referred Mr. Payne for another IME. Dr. McCleary further sought to have sprain of the posterior cruciate ligament, unspecified knee; sprain of the lateral collateral ligament, unspecified knee; and bilateral primary osteoarthritis of the knees added to the claim.

Prasadarao Mukkamala, M.D., performed an IME on Mr. Payne in September of 2021. Dr. Mukkamala was asked to provide an opinion on whether the additional diagnoses sought to be added to the claim by Dr. McCleary were appropriate. Dr. Mukkamala opined that there was no reason to add the diagnoses to the claim. Regarding the two sprain diagnoses, Dr. Mukkamala stated there was no credible medical evidence suggesting they should be added to the claim and that the request was "driven primarily by [Mr. Payne's] desire to obtain some additional impairment rating." According to Dr. Mukkamala, any suggestion by Dr. McCleary that Mr. Payne had not received a rating he deserved was erroneous. Further, Dr. Mukkamala stated that Dr. McCleary's comment that there had been no rating for joint space collapse pre-operatively was "an unprofessional comment" as there would be no separate rating for joint space collapse following a total knee replacement. Likewise, there is no separate rating for meniscal tear following a total knee replacement, as the meniscus is removed during that surgery. Dr. Mukkamala further explained that, pursuant to the *Guides*, a rating for a total knee replacement incudes consideration for loss of the meniscus and loss of cartilage. Dr. Mukkamala also noted that Mr. Payne exaggerated the nature and extent of his pain during the evaluation and was "obsessed with obtaining additional rating." Dr. Mukkamala opined that there was no indication for any other impairment rating or the addition of any other diagnoses to the claim.

Accordingly, Dr. Mukkamala determined that the only impairment rating necessary was for the total knee replacement. (Dr. Mukkamala declined to provide a rating for depression as it was outside his area of expertise). Dr. Mukkamala assessed 36% WPI in total for the bilateral total knee replacements, for which Mr. Payne had already been fully compensated. By order dated September 21, 2021, the claim administrator granted no additional PPD based upon Dr. Mukkamala's report, as Mr. Payne had already been granted 36% in various PPD awards.

Thereafter, Mr. Payne requested that the claim administrator "correct" the order regarding his PPD award. He also claimed that the claim administrator failed to add right knee ACL tear to the claim and that Dr. Mukkamala failed to provide an impairment rating for pre-operative osteoarthritis in both knees, right knee ACL tear, and meniscus tears. As such, Mr. Payne requested a supplemental PPD rating which the claim administrator denied on April 26, 2022. On May 6, 2022, the claim administrator informed Mr. Payne that right knee ACL had never formally been added to the claim, though it was covered through treatment and no benefits were ever denied in relation to the ACL tear. The claim administrator further noted that all Mr. Payne's compensable knee conditions had been "subsumed by the accepted and compensable total knee replacement." Mr. Payne protested the September 21, 2022, order granting him no additional PPD award and the April 26, 2022, order denying his request for a supplemental PPD rating from Dr. Mukkamala.

By order dated December 12, 2022, the Board affirmed the claim administrator's September 21, 2022, and April 26, 2022, orders. Regarding PPD, the Board found that six

6

evaluators had rated Mr. Payne's WPI and that only one evaluator, Dr. Guberman, found Mr. Payne to have more than 36% WPI for his knees. The Board found that Dr. Guberman's findings were not supported by the evidence of record, and that the OOJ had found his report to be unreliable in its August 15, 2019, order, which the Board previously affirmed on December 19, 2019.

The Board further found that, while Mr. Payne argued that he was entitled to additional impairment ratings for cartilage or joint space loss, Dr. Mukkamala found that Mr. Payne no longer had cartilage or joint space loss after undergoing the total knee replacements. Additionally, the Board noted that pursuant to the *Guides*, "only one evaluation method should be used to evaluate a specific impairment" and, therefore, Mr. Payne was not entitled to an additional, distinct rating apart from what he had already received. Lastly, the Board found that Mr. Payne was not entitled to any impairment award for his spine because it was not compensable.

Regarding Mr. Payne's request for a supplemental PPD report from Dr. Mukkamala, the Board found that the OOJ and the Board had previously determined that Mr. Payne was not entitled to an impairment rating for his pre-operative osteoarthritis. Further, Mr. Payne was not entitled to separate impairment ratings for the ACL and meniscus tears. As noted by Dr. Padmanaban, the diagnosis-based impairment method allowed for only 4% WPI for these tears, while the range of motion method allowed for 36%. The Board again noted that the *Guides* provide that only one method can be used, and thus the range of motion model was the best impairment rating Mr. Payne could receive for those diagnoses.

To the extent Mr. Payne argued that his claim was unlawfully time-barred, the Board found that there was no evidence to support his assertion. The claim administrator reopened his claim for PPD consideration, and the subsequent IME established that he was not entitled to an additional award. Based on the foregoing, the Board concluded that Mr. Payne failed to establish that he was entitled to a supplemental report from Dr. Mukkamala. Mr. Payne now appeals.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under West Virginia Code § 23-5-12a(b) (2022), as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;

7

(3) Made upon unlawful procedures;

(4) Affected by other error of law;

(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, __, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, Mr. Payne raises four assignments of error relating to his PPD award. While difficult to understand his arguments, it appears as though Mr. Payne claims that the respondents are attempting to prevent him from attaining additional PPD impairment ratings and, consequently, preventing him from filing for a PTD award. Mr. Payne argues that the claim administrator unlawfully denied PPD awards for certain compensable conditions in the claim, such as his ACL tear, and improperly denied his claims as time-barred. He further states the claim administrator has refused to issue protestable orders following what appear to be his physician's submission of several diagnosis update forms. Finally, Mr. Payne argues that the Board erred in affirming the grant of an incorrect PPD award when it previously ordered that he be evaluated for "abnormalities noted on x-rays," which he claims has never been done. Mr. Payne's argument can be summarized as stating that he believes he has not been fully compensated for his compensable injuries.

At the outset we dispense with Mr. Payne's arguments that his PPD claim has been improperly time-barred for reopening. Old Fund states in its response brief that it is not asserting that claim number 2004022949 is time-barred. Old Fund notes that this claim number has not been consolidated with claim number 2003049597, which it does not manage. In looking at the evidence before us, we cannot find that any of Mr. Payne's requests have been time-barred under claim number 2004022949. While the claim administrator issued two orders denying Mr. Payne's various requests as time-barred, the claim administrator issued corrected orders each time re-opening the claim. As such, there is no merit to Mr. Payne's argument that his requests are being denied on the basis that they are time-barred, and Old Fund has not taken the position that the claim is time-barred.

Next, we find that Mr. Payne has been appropriately rated for his compensable conditions in the claim. Mr. Payne's arguments come down to a fundamental misunderstanding as to how his compensable conditions should be rated. While we conclude that Mr. Payne was properly compensated based on impairment ratings for his total knee replacements, as discussed more fully below, we will briefly address Mr. Payne's arguments. First, Mr. Payne argues that he has not been fully compensated for his ACL and meniscus tears and his joint space collapse, citing to Dr. Padmanaban's comments that Mr. Payne would be entitled to a 4% PPD under the diagnosis-based estimate model. However, as noted by Dr. Padmanaban, Mr. Payne can only be rated under either the diagnosis-based estimates method or the range of motion method, but not both. Because

Mr. Payne's impairment rating was higher under the range of motion method, Dr. Padmanaban recommended an impairment rating under that method, and Mr. Payne would not be entitled to the 4% impairment rating under the diagnosis-based estimate method. According to the *Guides*, "the evaluating physician must determine whether diagnostic or examination criteria best describes the impairment of a specific patient. The physician, in general, should decide which estimate best describes the situation and should use only one approach for each anatomic part." *Guides*, at 3/84.

Second, while Mr. Payne argues that he is entitled to be evaluated under the "arthritis method" in the *Guides*, the evidence he cites to does not support his assertion. Specifically, Mr. Payne relies on the Board's March 29, 2017, order remanding for an additional IME, wherein the Board noted that if Mr. Payne's range of motion measurements were not valid, he could have been rated by "for the abnormalities noted on x-rays." There is simply nothing in this order suggesting that the Board intended that Mr. Payne be provided an impairment rating under Table 62 of the *Guides*. Moreover, following the Board's order, Dr. Padmanaban evaluated Mr. Payne using the diagnosis-based estimate method but found that Mr. Payne earned a higher impairment rating under the range of motion method. Again, as noted above, the *Guides* indicate that only one approach of impairment rating should be used to evaluate each anatomic part; therefore, to the extent Mr. Payne argues that he was entitled to an impairment rating under two methods, we find he is entitled to no relief.

Third, Mr. Payne claims that several physicians, including Dr. Bachwitt, opined that he was entitled to 28% PPD per knee. There is simply no evidence of record demonstrating that a physician other than Dr. Guberman recommended an impairment rating greater than 36% WPI total for the knees. The OOJ and the Board found Dr. Guberman's report to be unreliable and disregarded the same, and Mr. Payne never appealed the order with those findings.

In any event, Mr. Payne's arguments amount to naught because he underwent a total knee replacement and the impairment rating for the same subsumes the impairment ratings for his injuries such as the tears, arthritis, and joint space loss. According to Dr. Mukkamala, the total knee replacement includes consideration of loss of meniscus and cartilage, and Dr. McCleary's suggestion that Mr. Payne was entitled to impairment ratings for his pre-operative status was erroneous. Simply stated, Mr. Payne is not entitled to an impairment rating for a condition that has been corrected via surgery. Rather, he is entitled to an impairment rating post-surgery, once he has reached MMI. Because Mr. Payne no longer had tears of the meniscus or ACL, or arthritis, following his total knee replacement, he is not entitled to distinct impairment ratings for each of these diagnoses. As noted above, the impairment rating for total knee replacement takes into account the loss of meniscus and cartilage. What we are left with is Dr. Mukkamala's recommended impairment rating of 36% WPI for both total knee replacements. There is no other credible medical evidence

of record indicating that Mr. Payne is entitled to a higher impairment rating. Accordingly, we find that the Board did not err.

Lastly, while Mr. Payne argues that the claim administrator failed to issue several protestable orders, we find no merit in these claims. Mr. Payne was able to litigate each of the issues he claimed lacked protestable orders, including his psychiatric PPD award and his request to add lumbar conditions[4] to the claim, among others. As such, Mr. Payne fails to demonstrate how he was prejudiced by any alleged failure of the claim administrator, and we find that he is entitled to no relief in this regard.

Based on the foregoing, we affirm the Board's December 12, 2022, order.

Affirmed.


**ISSUED:** June 15, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen

Judge Thomas E. Scarr, not participating

---

[4] We note that Mr. Payne has litigated the issue of addition lumbar conditions to the claim twice to finality, without success. To the extent he argues on appeal that he is entitled to an impairment rating for his lumbar conditions, we note that they have never been held compensable.